**IN THE UNITED STATES BANKRUPTCY COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| IN RE ) | |
| ) | Case No. 06-01434-TLM |
| WILLIAM and POLLYANNA ) | |
| KELVIE, ) | |
| ) | |
| Debtors. ) | MEMORANDUM OF DECISION |
| _____) | |

**INTRODUCTION**

William and Pollyanna Kelvie ("Debtors") filed their chapter 7 petition for relief on November 10, 2006. Doc. No. 1. The provisions of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. 109-8, 119 Stat. 23 (2005), apply.

On May 11, 2007, the United States Trustee ("UST") filed an amended motion to dismiss this case under § 707(b) on the basis that granting relief would be an abuse of the provisions of chapter 7. Doc. No. 50 ("Motion").[1]

The Motion was heard on May 22, 2007. Doc. No. 56 (minute entry). Following post-hearing submissions, the matter was taken under advisement. This

---

[1] Consistent with the provisions of Interim Fed. R. Bankr. P. 1017(e)(1), the UST's initial motion stated with particularity the circumstances alleged to constitute abuse. Doc. No. 28. However, things changed when Debtors amended their submissions and certain issues raised by the UST based on Debtors' first filings were resolved (and other, new issues surfaced). The UST attempted to capture the changing landscape and meet the requirements of Rule 1017(e)(1) in its amended Motion, Doc. No. 50, and in its briefing. *Compare* Doc. No. 44 *with* Doc. No. 52. Debtors, too, tried to deal with these developments. *See* Doc. No. 54. The Court explains below which issues were finally presented.

MEMORANDUM OF DECISION - 1

Decision constitutes the Court's findings and conclusions. Fed. R. Bank. P. 7052, 9014.

**FACTS AND BACKGROUND**

Debtors' initial Form 22A, Ex. 4 (Doc. No. 13), concluded that a presumption of abuse arose under § 707(b)(2). *Id.* at 1 (checking box so indicating), and 5 (reflecting, at line 50, monthly disposable income under § 707(b)(2) of $7,312.26).[2] Pursuant to § 704(b)(1), the UST timely filed a statement of presumed abuse, followed by a motion to dismiss, which was also timely, *see* § 704(b)(2). Doc. Nos. 24, 28.

When the parties appeared at a hearing on April 2, 2007, to address this § 707(b) motion, they agreed to a continuance, and to a deadline for Debtors to file an "amended" Form 22A. Doc. No. 45 (minute entry).[3] Debtors filed an amended

---

[2] There is no dispute that Debtors' debts are primarily consumer in nature, *see* § 101(8), and that this precondition for § 707(b) applicability is met.

[3] Care should be taken in thinking and speaking of "amending" Form 22A. An amendment that "corrects" the calculations and assertions in the Form to meet the requirements of law or to accurately disclose the prebankruptcy factual situation is appropriate. An amendment that changes the assertions in the Form to address post-petition changes in facts and circumstances is not. The form is designed to reflect the situation as it existed on the petition date, as more fully explained in *In re Littman*, No. 07-20034-TLM, 2007 WL 1957175 (Bankr. D. Idaho July 6, 2007). *See also In re Gordon*, 360 B.R. 679, 683-84 (Bankr. S.D. Cal. 2007) (reaching similar conclusion in chapter 13, holding that income and expense schedules could be amended, but Form 22C was a historical document containing, among other things, debtor's "current monthly income" as statutorily defined, and could not be amended to reflect a change in debtor's expected future income). If a debtor has need to show what impact post-petition events would have on a Form 22 calculation, as for example under § 707(b)(2)(B)(iv), exhibits should be used rather than filing "amended" Forms. Here, for the most part, the "amendments" were to more accurately disclose prebankruptcy facts, and to correct miscalculations and similar errors in completing the form.

MEMORANDUM OF DECISION - 2

Form 22A on April 9. *See* Ex. 5 (also Doc. No. 46). By virtue of the changes Debtors made, the presumption of abuse did not arise under this calculation. *Id.*[4]

The UST then filed the Motion at bar. In it, the UST contends that certain of the deductions made by Debtors in their amended Form 22A should not be allowed and that, if the Court agrees, the presumption would again arise, and that Debtors would be obligated to rebut it under § 707(b)(2)(B) or face dismissal. The UST assailed, in particular, Debtors' inclusion of secured debt payments under § 707(b)(2)(A)(iii) for their house and a motor home, both of which Debtors proposed in their § 521 statement of intention to surrender.[5] The UST also

---

[4] Among other changes, Debtors' amended Form 22A decreased Mr. Kelvie's current monthly income (or "CMI," *see* § 101(10A)), increased Debtors' monthly priority tax payments, and increased secured debt payments. Based on the amendments, Debtors had combined CMI of $10,201.76 and total deductions of $10,070.95, leaving $130.81 in monthly disposable income. To pass the means test, this amount, multiplied by 60, must be "less than the lesser of – (I) 25 percent of the debtor's nonpriority unsecured claims in the case, or $6,000, whichever is greater; or (II) $10,000." See § 707(b)(2)(A)(i). The monthly income multiplied by 60 equals $7,848.60. Debtors reported $38,229.81 in nonpriority unsecured debt, 25% of which equals $9,557.45. Therefore, under the test contained in § 707(b)(2)(A)(i), the presumption of abuse did not arise. Ex. 5 at 5 (lines 48-55).

[5] To provide necessary context, some additional facts are needed. Debtors moved to the Boise, Idaho area in the spring of 2005. Mr. Kelvie was employed by an automotive franchise as a finance manager and, later, a sales manager. By late 2005, his salary was in excess of $100,000.00 per year, and Mrs. Kelvie had become employed as a sales associate in a Boise area jewelry store. Just prior to moving to Idaho, Debtors purchased a motor home. Their schedules indicated it was worth $30,000.00 at filing, but secured $50,000.00 of debt. Then, in May 2006, Debtors bought a home in Eagle, Idaho, fully financing the purchase price with a first and second mortgage. The schedules show the house's value as of filing at $450,000.00 with total secured debt of about $428,000.00. In August, 2006, Mr. Kelvie was informed his position would be terminated. He briefly took a job in Bend, Oregon, left it, continued looking for a position on the financial side of the automotive or RV industry, and was unemployed at the time of the petition. *See* Doc. No. 54 (supplemental brief) at 2-5. Debtors' briefing is relied on for this background because the parties neither stipulated to these facts nor presented testimony or other evidence regarding them. However, given the other conclusions reached by the Court below, this incomplete factual record is not an insurmountable problem.

MEMORANDUM OF DECISION - 3

objected to Debtors' attempt to deduct under § 707(b)(2)(A)(iv) as "priority" debt payment of their post-petition 2006 tax liabilities.

At the time of the May 22 hearing on the Motion, the parties entered into several stipulations. They agreed that Debtors' combined CMI, which would be used for lines 12, 16, 18 and 48 of Form 22A, was $9,384.96. This resulted in annualized CMI on line 13 of $112,619.52, an amount well over the applicable median income of $45,584.00. *See* Ex. 10.[6] They further agreed that the proper amount for line 25 (Other Necessary Expenses: taxes) was $3,534.44 based upon analysis of Debtors' "payment advices" and other data.

The parties continue to dispute whether Debtors can properly deduct their first ($2,393.00) and second ($999.12) monthly mortgage payments on their residence or the monthly debt on the motor home ($708.00) as secured debt payments on line 42 of Form 22A, or deduct a monthly amount of $29.28 on line 43 as an additional amount related to these assets.[7]

---

[6] Exhibit 10 was the UST's proposed, further "corrected" Form 22A. A number of the figures therein are subject to agreement; some of the UST's numbers and conclusions are not. The CMI figure is in the former category.

[7] The parties agree these are the properly calculated amounts should the expenses be allowed. Debtors placed these various secured debt amounts on their amended Form 22A, Ex. 5. That Form also reflects Debtors' understanding that, if the secured debt payments on the house *were* allowed, the IRS Local Standard for housing-mortgage/rent expense on line 20B would consequently be $0. Conversely, the UST agreed that if the secured mortgage debts were not allowed on line 42, Debtors would be allowed an $824.00 Local Standard housing-mortgage/rent expense deduction on line 20B. *See* Ex. 10. *Accord In re Meek*, 2007 WL 1830817 at *12-13 n.50 (Bankr. D. Idaho June 27, 2007) (discussing issue in context of chapter 13).

MEMORANDUM OF DECISION - 4

The parties further dispute whether Debtors can deduct, on line 44 of From 22A (payments on priority claims), any amount calculated on Debtors' 2006 tax returns. *See* Ex. 3. Those returns indicate taxes of $4,263.00 due to the State of Idaho and $9,253.12 due to the Internal Revenue Service. *Id.* The 2006 taxes were not due in November of 2006, when Debtors' filed their petition, but had been calculated by the time of the hearing in May, 2007.[8]

After the UST and Debtors announced the foregoing agreements, they presented legal argument on the basis of those agreed facts and several stipulated exhibits. No testimony was provided.

The parties, in effect, present two issues: (1) whether Debtors may deduct under § 707(b)(2)(A)(iii) secured debt expenses for real and personal property they have expressed an intent to surrender; and (2) whether Debtors may deduct as priority payments under § 707(b)(2)(A)(iv) amounts due on post-petition tax liabilities.

Determination of these issues impacts significantly whether a presumption of abuse arises under § 707(b)(2). And, if such a presumption exists, Debtors would then need to show "special circumstances" to rebut the presumption under § 707(b)(2)(B). Conversely, absence of a presumption would require the UST to

---

[8] In their brief, Doc. No. 54, Debtors argue 2006 taxes should be included on line 44 of Form 22A. *Id.* at 11. In a post-hearing submission, their approach shifted from including $73.28 of taxes on line 44 of their amended Form 22A (which had been $0 on their first Form 22A, Doc. No. 13) to $225.27 (the total of the 2006 taxes to the State and IRS divided by 60) on line 56 as an additional expense. *See* Doc. No. 59 (supplement) at Ex. A.

MEMORANDUM OF DECISION - 5

establish an alternate basis for dismissal under § 707(b), something it did not allege or argue in connection with the amended Motion. *See* Doc. No. 52. The parties' evidence, and for the most part their arguments, did not reach beyond these two primary issues.

**DISCUSSION AND DISPOSITION**

    **A.    Overview of amended § 707(b)**

As this Court explained in *Littman*, 2007 WL 1957175, BAPCPA significantly changed practice regarding dismissals under § 707(b). A motion under § 707(b)(1) asking that a case be dismissed as an abuse of the provisions of chapter 7 may now be brought by the UST, a trustee, or creditor. Abuse can be based on a petition being filed in bad faith, or the totality of a debtor's financial circumstances. *See* § 707(b)(3)(A), (B). Additionally, BAPCPA imposed a "means test" and, if the calculations under the complex terms of the means test establish a presumption of abuse, dismissal is required unless the debtors rebut the presumption or agree to convert the case to chapter 13.[9] *See* § 707(b)(2)(A); § 707(b)(2)(B).

*Littman* concluded that the means test is a "snapshot" of certain financial circumstances as of the date of the filing of the petition for relief, and that the calculations are strictly and intentionally limited to the formula Congress enacted

---

[9] Exceptions exist under § 707(b)(2)(D), (b)(6) and (b)(7) but are not implicated here.

MEMORANDUM OF DECISION - 6

in § 707(b)(2)(A).  Thus, in *Littman*, the means test analysis did not include post-petition child support debts.  2007 WL 1957175 at *4-6.[10]

### B. Whether Debtors may deduct payments under § 707(b)(2)(A) on property they intend to surrender

Section 707(b)(2)(A)(iii) allows debtors to deduct as a means test expense monthly payments for secured debts.[11]  The issue of whether those deductions can include average monthly payments on property a debtor intends to surrender has divided bankruptcy courts, but in a decidedly uneven fashion.

*In re Haman*, 2007 WL 1175532 (Bankr. D. Del. April 20, 2007), concerned a debtor's attempt to rebut a presumption of abuse by showing "special circumstances" under § 707(b)(2)(B).  In dicta, that court noted that the "overwhelming majority" of reported cases allow a debtor to include among the means test's secured debt expenses the debts on property the debtor intends to surrender.  *Id.* at *7 (collecting cases).  *In re Hoerlein*, 2007 Bankr. LEXIS 1043 (Bankr. S.D. Ohio Apr. 3, 2007), also found such deductions proper, relying on that District's earlier decisions *In re Sorrell*, 359 B.R. 167 (Bankr. S.D. Ohio 2007), and *In re Graham*, 363 B.R. 844 (Bankr. S.D. Ohio 2007) (adopting *Sorrell*).  *Hoerlein* also collected cases on the question, citing over two dozen

---

[10] However, the debtor in *Littman* was successful in rebutting the presumption of abuse that existed in that case.  *Id.* at *6-8.

[11] The amounts to be deducted are not the actual monthly payments due under the relevant contracts but, rather, the "average" monthly payments "calculated as the sum of . . . the total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the petition."  *See* § 707(b)(2)(A)(iii)(I).

MEMORANDUM OF DECISION - 7

similarly holding, and identifying three reaching a contrary conclusion. 2007 Bankr. LEXIS 1043 at *3 n.1.

Among those in the majority is *In re Longo*, 364 B.R. 161 (Bankr. D. Conn. 2007). *Longo* concluded that the means test calculations, including the secured debts under § 707(b)(2)(A)(iii), are intended to represent a snapshot as of the time of the petition's filing. *Id.* at 165 (citations omitted). This furthers Congressional intent for prompt screening of chapter 7 cases for abuse, conforms with the general tenet in bankruptcy that circumstances on the petition date control unless explicitly provided otherwise in the Code, and allows the means test to operate effectively as a "switching device." *Id.* at 164-65 and at n.8.[12] Consistent with this approach, *Longo* allowed the deduction notwithstanding the intent to surrender. *Id.* at 165-66.

*In re Mundy*, 363 B.R. 407 (Bankr. M.D. Pa. 2007), concluded that a plain meaning approach to the language of § 707(b)(2)(A)(iii)(I) and contextual analysis support the conclusion that secured debts may be included notwithstanding the debtor's professed intent to surrender the collateral securing them. *Id.* at 411-14. *See also In re Haar*, 360 B.R. 759 (Bankr. N.D. Ohio 2007); *In re Hartwick*, 359 B.R. 16 (Bankr. D.N.H. 2007); *In re Randle*, 358 B.R. 360, 362-65 (Bankr. N.D.

---

[12] A debtor is required to file promptly a means test form and must use Official Form 22A. *See* § 521(a)(1)(B)(v); § 707(b)(2)(C); Interim Fed. R. Bankr. P. 1007(b)(4); Fed. R. Bankr. P. 9009. Once a debtor's Form 22A is filed, the UST is obligated to promptly analyze and take action regarding the debtor's means test calculations. *See* § 704(b)(1)(A); § 704(b)(2).

MEMORANDUM OF DECISION - 8

Ill. 2006); *In re Walker*, 2006 WL 1314125 (Bankr. N.D. Ga. May 1, 2006).
Among their conclusions, these several courts find the language in
§ 707(b)(2)(A)(iii)(I) – "amounts scheduled as contractually due" – should be
interpreted to mean amounts owed pursuant to an underlying contract, regardless
of whether the debtors intend to surrender the property securing those debts.  *See*,
*e.g.*, *Longo*, 364 B.R. at 165-66; *Mundy*, 363 B.R. 407, 411-13; *Randle*, 358 B.R.
at 364-65; *Sorrell*, 359 B.R. at 184-85.

The opposite conclusion is reached in *In re Ray*, 362 B.R. 680 (Bankr.
D.S.C. 2007), *In re Harris*, 353 B.R. 304 (Bankr. E.D. Okla. 2006), and *In re
Skaggs*, 349 B.R. 594 (Bankr. E.D. Mo. 2006).  Those courts give the term
"scheduled" a bankruptcy meaning and conclude that, if a debtor indicates in his
bankruptcy schedules and statements that he intends to surrender the property, he
may not deduct the expense from current monthly income.[13]

---

[13] There is a third view, epitomized by *In re Singletary*, 354 B.R. 455 (Bankr. S.D. Tex. 2006), which concludes that the professed intention on the § 521 statement does not eliminate the right to deduct the secured debt payments under § 707(b)(2)(A)(iii), but the actual surrender of the collateral does.  *Id.* at 458.  *Singletary* was constrained by precedent.  *See In re Cortez*, 457 F.3d 448 (5th Cir. 2006) (holding under pre-BAPCPA § 707(b) that post-petition events should be considered in evaluating a dismissal for substantial abuse).  Thus, *Singletary* disallowed a secured debt deduction on a vehicle which had been surrendered by the date of the UST's motion, but allowed debt deductions for the house that had not been surrendered by such date even though an intent to surrender had been expressed.  This Court is not bound by *Cortez*.  It further concludes that an approach to the issue focusing on post-petition events defeats the function of the means test as an objective, formulaic analysis at the time of the filing of the petition.  The means test in chapter 7 calls for a snapshot, not a movie.  Tying the analysis to events occurring after bankruptcy but before the date the UST's motion is filed, or any number of other arguably significant post-petition dates, is inconsistent with the language and overall structure of the means test.

MEMORANDUM OF DECISION - 9

It serves little purpose to repeat at length here the arguments on both sides of this issue; they have been explained thoroughly in the above cited cases. The Court concludes that the better reasoned view, and one in accord with this Court's view of the language of § 707(b)(2)(A)(iii) and the role and function of the means test presumption in the chapter 7 context, is the majority position reflected by, *inter alia*, *Haman*, *Longo*, *Walker* and *Mundy*.

The Court therefore concludes that Debtors may deduct their monthly house and motor home payments. These obligations were contractual and remained outstanding at the time of filing. Upon calculating and deducting the monthly secured debt payments under § 707(b)(2)(A)(iii) for the house and motor home, the expenses on lines 42 and 43 of the UST's Form 22A, Ex. 10, will increase by $4,129.40, but they will decrease $824.00 on line 20B.[14]

### C.    The priority claims for post-petition taxes

The same analytical approach, combined with the plain language of the Code, helps answer the second question in this case – whether Debtors may deduct as priority expenses under § 707(b)(2)(A)(iv) an amount calculated upon their 2006 tax obligations. This section allows deduction of the "debtor's expenses for payment of all *priority claims* (including priority child support and alimony

---

[14] Recall, the UST stipulated to the accuracy of the monthly amounts for the mortgages and the motor home, and both the UST and Debtors agreed that inclusion of the IRS Local Standard mortgage/rent expense would depend on resolution of this issue.

MEMORANDUM OF DECISION - 10

claims) . . . calculated as the total amount of *debts entitled to priority*, divided by 60." *See* § 707(b)(2)(A)(iv) (emphasis added).

Both "claim" and "debt" are defined by the Code. *See* § 101(12) (debt is "liability on a claim"); 101(5) (a claim is a right to payment or a right to an equitable remedy for breach of performance). A "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor." *See* § 101(10)(A). Section 507 addresses "priority expenses and claims" and, *inter alia*, gives an eighth priority to "allowed unsecured claims of governmental units, only to the extent that such claims are for – (A) a tax on or measured by income or gross receipts for a taxable year ending on or before the date of the filing of the petition[.]" *See* § 507(a)(8).

The upshot of these several provisions is that Debtors' obligations to the State of Idaho and the IRS for 2006, as reflected by Ex. 3, are for a taxable year ending after, not before, the November 10, 2006, date of the petition and order for relief.[15] These were not priority claims at the time of filing in November, 2006. And, even without this definitional overlay, the authorities and policies surrounding the means test require an eye toward the situation existing on the

---

[15] Section 507(a)(8)(A) speaks to the date of the petition. Provisions like the definition in § 101(10)(A) refer to the order for relief. In a case such this, there is no difference. *See* § 301(a) (a voluntary case is commenced by the filing of a petition); § 301(b) ("The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.").

MEMORANDUM OF DECISION - 11

petition date and lead to the exclusion of a deduction for tax liability arising after the petition was filed.

Debtors may not deduct for means test purposes payment of their 2006 taxes evidenced by Ex. 3. In that regard, the UST's arguments are well taken. Line 44 should remain at $0.[16]

### D. The presumption does not arise

The Court therefore takes the agreed upon figures for CMI and the several uncontested deductions, as outlined earlier in this Decision. It adds the deductions for the secured debt payments on the house and motor home, and removes the IRS Local Standard mortgage/rent expense. It does not include any deduction for the post-petition tax debts as "priority claims" or as any other allowable expense. The Form 22A that results[17] would show:

| | |
|---|---|
| Current monthly income (line 12) – | $9,384.96 |
| Total IRS Standards deductions (line 33) – | $5,455.44 |
| Total additional deductions (line 41) – | $118.00 |
| Total deductions for debt payment (line 46) – | $4,597.93 |
| Total of all § 702(b) deductions (line 47, adding lines 33, 41 and 46) – | $10,171.37 |

---

[16] As noted above, Debtors later appeared to argue that the 2006 taxes should be included not on line 44 but rather on line 56 of Form 22A. That latter line addresses additional expenses claimed under § 707(b)(2)(A)(ii)(I). Debtors never explained why they believed the 2006 taxes qualified under this section. However, the inclusion of the secured debts on the house and the motor home under § 707(b)(2)(A)(iii) alone will result in negative monthly income and an absence of any presumption of abuse, rendering the question moot.

[17] The Court uses Ex. 10, the UST's suggested revised Form 22A, and makes the changes needed based on the Court's analysis above.

MEMORANDUM OF DECISION - 12

      Monthly disposable income
under § 702(b)(2) (line 50) –     ($786.41)

Thus, the presumption of § 707(b)(2)(A) does not arise. And Debtors are freed from the burden of rebuttal under § 707(b)(2)(B).[18]

### E. Additional inquiry

Section 707(b)(3) provides: "In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider – (A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." This language, however, does not compel the Court to determine additional issues. Here, the UST did not specifically advance its Motion with reference to either bad faith filing or totality of the circumstances concerning Debtors' financial situation. Additionally, as in *Littman*, the UST did not purport to present evidence to establish such grounds, and did not brief or argue the matter under authorities relevant to § 707(b)(3)(A) and (B). The parties certainly did not – in stipulating to certain facts and making arguments about what should be included in or excluded from the means test – attempt to create a competent evidentiary record on which the Court could reasonably rule regarding

---

[18] This is a fortunate result for Debtors because they did not present a record adequate to show that they met the several procedural as well as substantive challenges of § 707(b)(2)(B) to prove the "special circumstances" needed to rebut the presumption. *See Littman*, 2007 WL 1957175 at *6-8.

MEMORANDUM OF DECISION - 13

bad faith filing or evaluate the totality of the circumstances. It would be extraordinarily difficult, indeed impossible, to make competent factual findings on the subject of § 707(b)(3) on the existing record.

**CONCLUSION**

Based on the foregoing, the UST's objections regarding the manner in which Debtors completed their Form 22A are well taken only in part. Debtors may not deduct under § 707(b)(2)(A)(iv) amounts related to their post-petition taxes. However, Debtors may deduct under § 707(b)(2)(A)(iii) amounts based on secured debts notwithstanding Debtors' expressed intention to surrender the collateral securing those debts. When the means test figures in this case (as stipulated to by the parties, or as otherwise established by the record) are adjusted to account for the Court's determination on these two submitted issues, no presumption of abuse arises.

The UST's Motion shall therefore be denied. The Court will enter an appropriate order.

DATED: July 10, 2007

TERRY L. MYERS
CHIEF U. S. BANKRUPTCY JUDGE